Your Honor, this case is on the docket 2-810-018. Mr. Robert A. Neuman v. Plaintiff Appellant and Mr. John W. Gaffney v. Defendant Appellant. I'm here on behalf of the Plaintiff Appellant, Ms. Kimberly and Mr. Southerland. I'm here on behalf of the Defendant Appellant, Mr. John W. Gaffney. Ms. Southerland, you may proceed. Good morning. I'm Kimberly Southerland with the Plaintiff Appellant. Please speak up so that your comments are accurately recorded. The central issue in this case is whether the statute of repose does not apply because the defendant, Mr. Gaffney, fraudulently concealed the cause of action. The main document to show this is a comparison between the court order where he told the court that a plaintiff, one plaintiff, was voluntarily dismissing the case, the underlying class action. Which plaintiff was that? They didn't say. It's a very vague order. The docket sheet is on A-19. It was Mr. Midnick, correct? But they didn't specify which plaintiff. He just said that it was an oral motion. There's no transcript, no motion, no notice. Well, he did indicate that the complaint was dismissed and that they should get a new attorney, correct? No. No, the order just says it's the order of 11-17-1999. It's on A-19 with the appendix. But in the correspondence, he indicated, did he not? No. He lied to his main plaintiff, Midnick, in his correspondence, which is in the appendix. He said that the judge dismissed the case, which isn't true. Well, the judge did dismiss the case on his motion. It's still a dismissal, correct? It's not dismissed by the judge. It's still a dismissal. It's the judge enters the order of dismissal, correct? There's no order of dismissal. Okay. The order reads, plaintiff's oral motion to dismiss this case without prejudice, pursuant to the voluntary dismissal statute, is granted. Okay. So he made the motion. No, that's okay. He said he made that motion. So then along comes Mr. Newman, correct? Well, the next thing is that he wrote to his client and said the judge dismissed the case. A voluntary dismissal is not the same thing as a judge dismissing a case. Right. Okay. So then along comes Mr. Newman. Tell me how Mr. Newman is affected by this misrepresentation, as you describe it, if you will. Okay. The midvick, the plaintiff, was the class representative for Mr. Newman and all the other unnamed class members in the midvick case. And he has a duty, a fiduciary duty toward Mr. Newman. And to carry out that duty, he needed to know that his lawyer really just told the judge some plaintiff was voluntary dismissal. No plaintiff was. Midvick obviously didn't know anything about it. Or Gaffney went to fact to write a letter to him and say that it was the judge's idea. And he said it was the judge's idea because the damages were really being litigated in Chicago, which was not true. How was this a material fact? I mean, when the knowledge was there of a dismissal and indicated that they should get a new attorney, how is, how the case got dismissed material? Because the midvick, the plaintiff, was misled. He thought that the judge had, on some particular grounds, maybe that the damages were being decided in another case in Chicago, had on his decision-making and his thinking decided to dismiss the case. So did midvick think his claim was still a lie? No. He was told by his attorney Gaffney that the case was not a lie because the judge thought the case was being litigated, the damages were being litigated in Chicago, which wasn't true. So midvick would have known the truth and know that his lawyer went out there and misrepresented to the court that the plaintiffs, midvick and Irvin, were voluntarily dismissing. So then why is it midvick, though? Then he would have got another lawyer. I'm sorry. Why is it midvick, the plaintiff, here? Well, midvick is not my client, number one. And number two, okay, this started out, there was a liability class action McCoskey case where I represented the class, and we won that case. And then the damage issue was totally separate, and these unnamed class members were all identified, were given the right to skip the first phase of the entrance, the written phase of the entrance test and go on to the other phases, the physical test and the oral interview and things like that. And if they went through all those stages, which my client did, then they could seek damages. Right. So, sorry, midvick and Irvin did not go through those other phases. Let me ask you this. The Seventh Circuit said essentially that Newman was not diligent, correct? No. The Seventh Circuit used the language, a diligent member of the 1992 class would have contacted Southerland and she would have alerted him to the 1999 case. Is that accurate? No. First of all, that's not in the Seventh Circuit disposition. It's speculation. It's in there. But it's not based on anything that was litigated in the lower court. I'm Southerland. I didn't know about the case, so I don't know how I could have alerted him. And number two, the class notice, which is in the appendix, says do not contact Southerland. So we should ignore the Seventh Circuit's claim? Well, it's speculation. They were assuming that I knew about the midvick case, which I didn't, and they didn't look at the class notice, which told unnamed plaintiffs and Coskey, mainly Newman and others, not to contact me. And if he had, I would have, if I would have looked at the midvick court file, there wasn't a page for them, and it was in a different, it was in Rockford. I was in Chicago. If I had even known enough that the case was there and looked at it, I would have thought, oh, the judge dismissed it. I'm sorry, the plaintiffs voluntarily dismissed it, so there is no case. I wouldn't have known until I got that letter that Gaffney sent his client midvick that he never told his client midvick that he pulled a fast one on the court and told him that the plaintiffs were dismissing when they weren't. And so midvick would have been known to exercise his fiduciary duties, since he and his client was, his lawyer was misrepresenting what happened in court, that Gaffney told the court that he, midvick, and Irvin were voluntarily dismissing when they weren't, and then he would have had, his fiduciary duties would have been to go hire a new lawyer. You found Mr. Newman, correct? Yes. How did you find Mr. Newman? Okay, I had to go to the University of Illinois library. Okay. I had to see which, they have a, the state police have a magazine they put out, and they show who graduated for each class, so I had to see, I had to get a list of all the class graduates, compare that to my list of the plaintiffs, and see who were the, I named class members in Kosky, see who made it to graduation. And there weren't that many, I think there was only seven that I found. And so how many years did you wait before you went and looked? As soon as I got this letter from, that Gaffney had sent to midvick, and I saw, and then I compared that to the court file, saw there were two different things. So midvick came to you? No, I never talked to midvick. You found all this stuff yourself? I was given the midvick, the letter that midvick had. By whom, by midvick? Yes, I'm sure it came from him, yes. Well, when did you get it? In 2014. And then I went to, I did the comparison of that with the court file, saw there were two different things, and then I had to go to the National Archives to figure out what happened. Why couldn't Mr. Newman have done that if he was interested? He didn't know that there was a midvick case. Okay, going back, what happened is, on the liability issue, on the damage issue, the judge in Chicago, Judge Lineweber, had said that nobody could get damages. And I appealed that order in a case called Bishop v. Gaynor, and I won that case because the court said that the district court, Judge Lineweber, could not deny these people the right to claim damages. And the problem was, is that the docket sheet in the district court said that I lost, when I really won. So anybody that looked at the public record, which is all they could do because they were told not to contact me, there were 5,000 absent class members, I couldn't have 5,000 people calling me. And that's what the court ordered. They would have looked at the docket sheet and thought they had no right to damages. Did anybody ever get any damages? No, because this was all successfully buried. The state had gotten Gaffney panicky because they said he didn't file an EEOC charge in the midvick case. But under the Horton case, he didn't have to because my employer, the Kasi case had a promotion level and an employment level. But the point is, did any member of the class ever get any damages? No, the state successfully made sure. The case is over. No, it's not over. What's pending? This case. Other than this case? Right. Is there anything else pending? No. No member of the class has ever gotten any damages? I know that this case is pending. This is a malpractice action. My point is, has any member of the class ever received any damage award from the state of Illinois? No, it was all successfully defended. No, not defended. The state of Illinois in the midvick case raised the EEOC charge problem that Mr. Gaffney never filed an EEOC charge. And that was not true because my client, Bishop, in the Kasi case filed this charge. And there's a single filing rule in the Horton case, which I've cited, that says that Gaffney never would have had to file a charge. But apparently he panicked and then came up with this misrepresentation in court that the midvick plaintiffs in Bourbon were dismissing their own case. Did anybody in the Kasi case, did anybody ever get any damages? To my knowledge, no. Okay, so no one, no one, no member of the class, no potential member of the class has ever received damages. No, for two reasons. One, the docket sheet in Kasi showed that they had no right to it, even though they really did because the docket sheet was wrong. And then this midvick case, which was filed for damages, got voluntarily dismissed because the state misled Gaffney to think he had to file an EEOC charge. And then he got scared and lied to his client and said, oh, the judge has dismissed it. In your brief, another point, in your brief, you request reassignment. Yes. But you cite no authority for your proposition. I just, your supervisory powers is all I could find. In your brief, you never even used the word prejudice or unfair. I think I set the facts to show that, that I was not allowed to argue, and I was cut off all the time. I was told because I disagreed with the judge that I was being contentious. And so I set out the facts to show those conclusionary words, yes. Do you have to show a fraudulent concealment here in order to get past the statute of repose? What is your, what do you submit the fraudulent concealment was, that telling him? Telling, sorry, first of all, telling the judge that the plaintiffs, midvick and Irvin, were voluntarily dismissed, or at least one of them was. And then writing to his client, midvick, that, oh, no, the judge was the one that did it because the damages in Chicago, they weren't. This was all lies. Well, can you connect this? How is that material? That's why the case, that's why midvick would have, would not exercise his fiduciary duty to get another lawyer since Gatton was not telling him the truth about what happened in court. You're saying that's why he didn't do that? Well, he was being misled by his own lawyer to say that the judge dismissed him for good reasons, namely that the case was passed. So that's why you say he didn't get another lawyer? He didn't do anything to exercise his fiduciary duty. And Gatton, too, had a fiduciary duty to the unnamed class members, which I set out the General Motors case and the deposit guarantee vein case. Was the information in the letter as to your contact information? That was accurate, correct? We never, no, Gaffney never contacted me. No, the letter from Mr. Gaffney to his client, Mr. Midvick, he set out your contact information, correct? No, he didn't. He just, I think. It's in the letter. He told him to contact me. Right. But the class members said not to. And I wouldn't have known about it either. In 1999, when the orders were in, I didn't know about the letter. Let me finish my question. Yeah. He did put in his letter a recommendation that he contact you, correct? To handle the damage case in Chicago when there was none. Did he contact you? No. But if there was a fraudulent concealment, why would he, if he intended to deceive his client, why would he give you, give him an accurate contact information for you? Just my name, which he would have said anyway. And the class members said not to contact me. And if there was, he was saying because I was handling some damage case in Chicago, which I wasn't. So if he would have contacted me, I would have said I'm not handling the damages. So that would have taken him nowhere. The Chicago case was over. I wasn't representing anybody, representing class members on damage. So at that point, the Chicago case was over. The liability case, yes. The liability case was over. There was no damage case at the point. So if he would have contacted me and said where's my damages, I would have said I'm not handling them. All right. So if there's no further. You'll have time to rebuttal. Okay. Thank you. Justice of the Court and Mr. Clerk. Good morning. My name is John Glafken, the appellee in this matter. And as I stand before the Court, I find myself in a circumstance that I've never had in my career. And I've been doing this about 30 years. I don't have a lot to say. The court assures cases whether 735 ILCS 5-13-214.3 bars the filing of a lawsuit for illegal malpractice beyond the six-year statute of repose. But she's raising fraudulent concealment. So we kind of have to get into the facts of the case in order to be able to determine whether the statute of repose is applicable. Correct. I believe the argument is correct. Although, remember, Judge Meyer dismissed this on a motion to dismiss. So all the well-plaid facts in the complaint are assumed to be true. The problem is if you look at her complaint, there was not a single fact that was alleged in the complaint that said fraudulent concealment. Or had any factual allegations. She did say in her complaint that I committed fraud when I misled Mr. Mitvick into thinking that the judge dismissed the suit rather than the voluntary dismissal. But there is nothing in her complaint that indicates any factual basis for fraudulent concealment, which, under the statute of repose, is really the only defense you have to a statute of repose issue. So Your Honor is absolutely correct. We do need to get somewhat into the facts. But unfortunately, what I think Ms. Sullivan is doing is she's getting into facts that are not, one, of record. They're not in the record. She's talking a lot about what happened with the Kosky case and what she did there. None of this is raised in front of Judge Meyer. Well, we can take judicial notice of the at least the decisions of the court in the Kosky case, correct? Oh, absolutely, Your Honor. And I would encourage Your Honor to do so. Because even after this matter was taken care of in 1999, Ms. Sullivan continued to litigate the Kosky case. And, in fact, if I recall correctly, there were at least one, if not two more, Seventh Circuit opinions that came out after this case was dismissed where she was back in court arguing that the class plaintiffs should be entitled to monetary damages. So the issue in regard to that was being dealt with in Chicago at the time that this case was dismissed in 1999. So why don't you shed some light on us, shed some light on the question? Because the record is pretty scarce here, and it's difficult to find out exactly how is that or what exactly happened with Mitvick's case in Rockford. Certainly, Judge. What happened in the case where I was representing Mr. Mitvick and Mr. Urban is I had gotten a notice. My client came in with the notice from the court saying you should find counsel to get monetary damages. So I filed a suit on behalf of Mr. Mitvick and Mr. Urban, and I asked for class certification. Class certification was never granted by the Federal District Court. So I spoke with the attorneys representing the city of Chicago, and they indicated that there was a matter that was still pending in Chicago where Ms. Southern was actively representing the class. And when I went down to Chicago, I took a look at the pleadings, I took a look at the dockets, and it appeared to be correct that they were still litigating the issue of monetary damages for the class at that time. So I spoke again with the attorneys representing the city of Chicago, and he said, I believe you're correct. I believe these issues are still being dealt with in Chicago. And therefore, I spoke with my client, I explained that to him, and said, I think we need to dismiss the case here. It's premature because the issues are still being litigated down there. And basically, as I recall, and I apologize, it's going back almost 20 years. As I recall, I had a telephone conversation with the attorneys, I appeared in court. No, it's just, you know, don't go outside the record again. Okay. Stick to the record. I apologize, Judge. Basically, the case was dismissed because the belief was with all the parties that the issues were being dealt with down in Chicago contemporaneously with what we had filed. So you told them that? I did, Judge. I think the issue here, Your Honors, and the Supreme Court is very, very clear. It's black-letter law. There's a six-year statute imposed. It doesn't matter what the plaintiff knew or didn't know in what he discovers the injury. The six-year statute imposed applies to completely bar any cause of action unless, as Your Honor has mentioned, you can show fraudulent concealment of some type or another. So then really the question becomes, why are we here? I think we're here because the plaintiff, Ms. Kallis and Ms. Sutherland, are on a peripatetic search to resurrect a case that's 20 years old. They've been to the district court in Rockford. They've been to the Seventh Circuit Court of Appeals. Ms. Sutherland filed a petition for search warrant in the U.S. Supreme Court, which was denied. Then they take literally the same facts, the same arguments, the same cases, and file that in the state court and say, well, now we think it's a malpractice suit rather than trying to intervene. Ms. Sutherland says that the Seventh Circuit's language regarding Mr. Newman is speculation about his diligence. When the court said a diligent member of the 1990 new class would have contacted Sutherland and she could have allured him to the 1990 case, she says that's speculation. Why is it not speculation? It is simply not speculation. It's because of the facts. What the Seventh Circuit found was that Mr. Newman, in the deposition that he had given in regards to the case in Rockford, indicated that he knew of the case in 2001 and took no action on the judge. So it's not speculation when the court says Mr. Newman sat on his rights and didn't do anything from 2001 until he was found by Ms. Sutherland in 2015. Because Mr. Newman admitted in the deposition that he was aware that the case was pending and, in fact, said he went to another attorney and spoke to that attorney who said, I think it's going to be a hard case for damages. And then Mr. Newman, after he spoke with that attorney, he didn't do anything else, sat on his rights until 2015 until Ms. Sutherland contacted him and, I'm assuming, said, I think we can get you some damages here. So I don't believe that the Seventh Circuit's finding in that case was speculative at all. It was based on facts. And, in fact, what the Seventh Circuit said of Ms. Newman, of Ms. Sutherland's arguments, is that they were merits. And those exact same arguments that she brought up before the district court, that she brought up before the Seventh Circuit, that she brought up to the United States Supreme Court, and that she also brought up to Judge Myers in the McKinley County Circuit Court, are all the same argument. And, quite honestly, Judge, I believe that what they're trying to do is to resurrect a case that is more than 20 years old when the law in here is very clear. And then I believe that the plaintiff's actions are not only meritless, but I think, indeed, sanctionable. Because if you look at the case law, you look at the facts that have been presented throughout this entire thing, I don't believe there's a good faith basis for Ms. Sutherland to make these arguments. Well, you didn't ask for sanctions, did you? I believe in the last line of my brief, Judge, I would have to look, but I believe I did ask for sanctions. You won't get my rebuttal? I won't, Judge. I apologize. I believe in the conclusion section, Judge, I said, the counterfeit attempts by Mr. Meehan and his attorney, Kimberly Sutherland, to find a venue in which to resurrect a life-saving practice. I apologize.  So, really, the primary weakness in the case is revealed if you look at the record and the colloquy between Ms. Sutherland and Judge Meyer. And it's exactly what Your Honor had pointed out. At the time, and it's in the record on pages 22 and 23, at the time, Judge Meyer asked Ms. Sutherland to give him one example of fraudulent concealment, one fact that would say that this was fraudulent concealment, because it took place in court, in an open courtroom, on the record. And Ms. Sutherland was at a complete loss to assert even one fact supporting an allegation of fraudulent concealment. Well, how was Newman to receive notice of this dismissal? He – and I guess that's part of the issue here, Judge. Ms. Sutherland's argument is that Mr. Newman was entitled to notice. Mr. Newman, at the time, in 1999, even Ms. Sutherland was unaware of Mr. Newman's existence. He was part of the class that she represented in the Kosky case, but she was completely unaware that he even existed until 2015. So the issue then becomes, was he, as an unknown and unnamed member of the class, was he entitled to notice? And I believe both the district court and the Seventh Circuit have taken care of that. And so he was simply not entitled to notice under Federal Law, Civil Procedure 23E, that all the rule required at that time is that the judge consider whether or not – because – and I apologize, I skipped a part there. At this point, the class action had not been certified, and that's very important. Because if the class action had been certified, then of course the class plaintiffs would be entitled to notice. But both the district court and the Seventh Circuit found that since the class had never been certified, and the judge considered the motion she dismissed, that no individual notice was required for any of the class members. That is the linchpin of Ms. Sutherland's argument before Your Honors today, is that somehow – and I'll be quite honest with Your Honors – it's a little difficult to connect all the dots. Because she talks, in some instances, in regards to Mr. Mitnick, who is not her client, and Mr. Mitnick's fiduciary duties, then says that I have a fiduciary duty to an unknown and unnamed class plaintiff to give him notice as well. And I believe that Judge Meyer dealt with this – the underlying case, because Judge Meyer, in the record, indicated that you have to give notice to everyone in the world. Because if you're an unknown and unnamed member of an uncertified class, how do you give notice to someone? How do you know who to give notice to? And that's really – that's really what this case comes down to, Your Honors. At this point, it's almost 20 years ago since this happened. At no point during any of the litigation – there has been extensive litigation on this – has any court found that any of the arguments being put before Your Honors today actually hold water. You know, quite simply, the statute of repose is the statute of repose. And there's nothing in this case that indicates that this would be the case that Your Honors would want to take and use to overturn the statute of repose and Supreme Court precedent, you know, simply to provide a remedy in this case. It's – it's black and white, and it's black liberal law, Your Honors. Thank you. Thank you. Have a good day. As I said, in 1999, the liability case was over. The appeals cases he's talking about was what I said in the opening, that the judge had said you don't have any right to damages, the unnamed class members. I appeal that decision of whether they had the right to damages. I never dealt with the actual damages. Well, let me ask you, in order to prove fraudulent concealment, you have to show that he was under a duty to disclose to the plaintiff, the woman in this case. If the Seventh Circuit and the district court both said that there was no class certified, how was he under a duty to disclose? Isn't that where fraudulent concealment comes in? They never dealt with the issue of class certification. He never brought up class certification. And there's nothing in these appellate court decisions about notice. This is coming out of nowhere. The Seventh Circuit – that was a – he's talking about the case where we tried to intervene in the Midford case. And the Seventh Circuit said they were reaffirming – they were affirming the district court's finding that we were untimely, but the district court never found we were untimely. And the district court found that notice was waived, but the Seventh Circuit said that's – that's a point we need not address because – But I think we have to address it here, don't we, for fraudulent concealment. I mean, don't we have – doesn't – in order to have fraudulent concealment, don't you need to show that he had a duty to the plaintiff and that the duty being notice? And so where was his duty to notify an unknown plaintiff? Okay, he had a duty to tell the truth to the class representative. And would it have made a difference had he said it was dismissed by the judge or if he voluntarily dismissed it? How would that have been any different? Okay, well, he voluntarily dismissed it on behalf of Midford. Right. And Midford knew nothing about it. So he had a duty to tell Midford, the class representative, the truth. If he would have told Midford the truth, then he probably would have moved the EEOC charge requirement or whatever he wanted to tell him. But he had the duty to say or even tell him, And then he tells Midford that the judge had grounds because damages were being decided in Chicago, which they weren't. The only thing I appealed was the right to damages. Right. And I guess – and maybe I'm just a little confused, Ms. Sutherland, but I'm saying that whether it was dismissed by the court or dismissed by counsel, notice was not given in either event. He gave false – he gave something much worse. He gave false notice. He gave false notice to Midford because of the representative, the agent of my client. Oh, I see. So he lied to Midford, which was by passing on as a lie to my client. That was a fraudulent concealment. He should have told him the truth. How would that have made any difference? That's my question. Okay. If he would have told Midford that I just went under your name, even though I never talked to you about it, and moved on to dismiss it because I was afraid he'd sue me for malpractice because I didn't file EEOC charges. If he would have told him the truth, then Midford probably would have gotten another lawyer and figured out what was going on. And then your client would have tagged on to that. Exactly. He's got a class number. And the deposition he's talking about, which is not in the record. Speaking of depositions, was there – what you're saying about Midford, what he would have said, what he did say, is there any – anywhere, any deposition of Mr. Midford on that? No, we haven't done any – we weren't allowed any discovery in this case. We don't know what Urban was told. We haven't done discovery in this case. We haven't got that point. The deposition he's talking about, that was in the intervention case. Newman was told by an attorney not what he said. It was – he would have seen the order from Judge Leinoir saying nobody gets entitled to damages. He said, I hadn't gotten my decision on appeal yet at that stage. So he looked at the record and said, there's nothing I can do for you. Because he would have looked at the court docket. That was the problem here. It said that the appellate court was affirming the district court that you couldn't get damages. So – but Newman didn't know anything about the Midford case, that there was a class action pending. And again, he never asked for class certification. That's not true. How are the arguments here any different than what you've argued previously in federal court? Oh, that was about intervention. It had nothing to do with the issues here. That was about whether Midford could take over the class after so much time. That's why the court thought that the lower court found it wasn't timely. Because the case wasn't – it was just abandoned. There's no order saying this class is dismissed. And in 1999, the federal rule 23E for class action said that Gaffney would have had to notify individual class members of a dismissal, which there wasn't in the record. Prior to certification? Prior to certification, yes. That was changed in 2006. So if that happened today or after 2006, it would have been different. But before 2006, in 1999, you would have had to notify the people if this was a dismissal or settlement. Okay. Thank you. Your time is up. Thank both parties for their arguments today. A written decision will be issued in due course at court stage and recess.